NANCY GORDON *v.* CRAWFORD AMIDON.

*Bastardy. Husband and Wife. Abatement. Judgment.*

Where a complaint of bastardy was made and the overseer of the poor assumed the control of the case as provided by statute, the intermarriage of the complainant and defendant after the birth of the child and before trial, terminated the suit.

*It seems,* that if the defendant after marriage, had recognized the child as his, such recognition would have had the same effect upon the suit.

It would have been more regular, if instead of rendering judgment for the defendant, the court had treated the suit as abated by the intermarriage of the parties.

PROSECUTION for bastardy. Plea not guilty, and issue joined thereon. Trial by the court at the June Term, 1862, KELLOGG, J., presiding, and judgment rendered for the defendant,—to which exceptions were taken. The facts of the case sufficiently appear in the opinion of the court.

*A. L. Miner,* for the defendant.

When the marriage took place the complaint was *dead.* It

was in the wife's name ; there was no longer any complainant to prosecute,—no Nancy Gordon in being,—no bastardy, and no bastard child. The child was rendered *legitimate* by the marriage. C. S. 365, § 5.

*Butler & Wheeler* and *H. K. Fowler*, for the town of Winhall, prosecutor.

The child being born before the commencement of the prosecution, the subsequent marriage of the parties does not bar the suit. 1 Black. Com. 458 ; C. S. ch. 71, § 11. For the judgment reaches back to cover *expenses already accrued*. C. S. ch. 71, § 7.

2. The subsequent marriage was a voluntary act on the part of the defendant, and was an attempt to compromise the proceedings, and cannot have that effect without our consent. C. S. chap. 71, § 21.

3. The bonds of matrimony may be regarded as bonds to indemnify the town against its support. But in that view the defendant must pay costs and expenses. *Ib.* § 22.

PECK, J. This complaint for bastardy under the statute commenced in the name of the mother charges the defendant with being the father of a bastard child of which she was delivered March 31, 1860. The complainant being an inhabitant of the town of Winhall, the overseer of the poor of that town commenced the proceeding on the 10th of April, 1860, in the name of the mother, she having signed and sworn to the complaint in usual form. The overseer at the time of the commencement of the proceeding filed with the justice a certificate under his hand of his intention to prosecute the complaint and control and manage the prosecution and that he would indemnify the complainant from all future costs in the premises. The case was tried by the court at the June Term, 1862, upon the general issue not guilty. The complainant was sworn as a witness on the part of the plaintiff, and the overseer offered to prove by her the facts set forth in the complaint. Thereupon the defendant proposed to show by her that she was at the time of the trial the

lawful wife of the defendant, and she testified without objection that she was married to the defendant October 6th, 1860. The defendant was then sworn and gave similar testimony, and from their testimony the court found that they intermarried Oct. 6th, 1860, and that they had lived and cohabited together as husband and wife ever since, and that they had had another child born of which the defendant was the father, begotten since their marriage. No question is made by the counsel but that the evidence proved the marriage. The defendant then objected to the complainant as a witness in support of the complaint, and the court excluded the evidence. The overseer then proposed to call the defendant as a witness for the same purpose which was also objected to by the defendant's counsel and excluded. No other evidence being offered in support of the complaint, the court rendered judgment for the defendant. To the rulings and decisions of the court the counsel of the overseer excepted.

The first question which arises and which has been discussed, is as to the effect of the intermarriage of the parties upon the suit. If it had not the effect to bar the further prosecution of the suit, the other questions properly arise, whether in a proceeding of this character the husband and wife are competent witnesses for and against each other when they stand as adverse parties in court. We think the intermarriage of the parties terminated the suit so that it could no longer be prosecuted. It is a general principle that husband and wife cannot maintain suits at law against each other. Unless this proceeding for bastardy can be distinguished so as to form an exception to this rule, the suit after the marriage had no *status* in court for want of proper parties. A wife prosecuting a suit at law in her own name against her husband, is certainly a novel proceeding. No one could doubt, had this been a suit founded on contract, trespass, or other ordinary tort, but that the marriage of the parties would have terminated the right to prosecute it. We see nothing in the nature or character of this proceeding to take the case out of this general rule. It is true, the right to maintain such suit by a female is created by statute. The right and the remedy both depend on the statute, yet the general principles and policy of

the law must be regarded in the prosecution of the remedy except so far as the statute has either expressly or by fair implication provided otherwise. There is nothing in the statute to warrant the conclusion that it was the intention of the legislature to authorize a wife to prosecute such suit against her husband. It is true the town which is charged, or likely to be charged with the support of a bastard child may commence and manage and control the prosecution, appropriating the avails to the support of the child ; yet the suit is in the name of the mother and is substantially her suit. The interest of the town is collateral and contingent. The statute in case the town is likely to be charged with the support of the child deprives the complainant of the power to discharge the defendant when the town assumes the control of the suit, unless by consent of the town. It also forbids the town to compromise the suit without her consent. It thus protects the interests of both. The statute does not prohibit the complainant from marrying the defendant, and no such prohibition can be implied ; and hence the necessary legal effect upon the suit, must follow such marriage. It cannot be said to be against the policy of the statute to allow the defendant to make the most effectual reparation to the complainant in his power for the wrong he has done, even at the expense of defeating the pending suit. It is urged by the plaintiff's counsel that as the statute provides that if the woman shall be married before she is delivered of such child, the defendant shall be discharged, it is to be inferred that a marriage after the birth of the child was not intended to have that effect. This argument would be sound and probably conclusive if the statute in that provision was limited to a marriage with the defendant, the person charged in the complaint. But that provision has no special or exclusive reference to a marriage with the party charged. It refers to marriage generally, and is founded on a general principle of law which renders children legitimate who are born in lawful wedlock, although begotten before. Therefore if the woman marry before the birth of the child, the child is thereby in contemplation of law legitimated, *prima facie* at least if not conclusively ; and as the child in such case is not regarded as a bastard, the statute provides that the de-

Gordon *v.* Amidon.

fendant shall be discharged. It has no peculiar and special reference to a case where the party charged in the complaint marries the complainant pending the prosecution. The plaintiff's counsel cite *The King* v. *Luffe*, 8 East, 193, to show that a proceeding under the English statute on this subject can be sustained in case of a bastard born of a married woman while she has a husband, and that she may be a witness. It was so decided in that case, the want of access by the husband being shown. That case differs widely from this. In that case it was not the husband who was sought to be charged as the putative father, but a third person, the husband of the mother of the child being no party to the proceeding. Mary Taylor the mother of the child was the wife of Jonathan Taylor at the time the child was begotten and born, and Luffe was the party charged as the putative father. This case therefore does not establish the proposition claimed. There is another reason why this case is not an authority to sustain this proceeding in the name of the wife against the husband. The statute of George 2nd, under which that case was decided differs from ours. It is true the woman is made a witness by that statute, but the proceeding is not a proceeding in the name and in behalf of the mother. It is a proceeding in the name and for the security and indemnity of the public. It is only authorized in cases where the child is chargable or likely to become chargable to the parish for support. The prosecution is in the name of the King and on complaint of the overseer of the parish. The order is different under that statute from the order under our statute. Under that statute the order is made upon the mother as well as upon the putative father, fixing the sum each shall pay weekly or at stated periods, to the parish for the support of the child. At least it may be made upon both, and was so made in that case. The proceeding under that statute, instead of being a proceeding in the name of the mother against the putative father, is a proceeding in the name and in behalf of the public against both the culpable parties, and the order is made against both for the payment to the parish. No authority is cited showing that even under the English statute such proceeding can be maintained after a marriage of

the mother with the putative father. We think it quite clear under our statute it cannot be done.

There is another ground on which the defendant's counsel claim to rest the case, that is, that the facts stated in the exceptions legitimate the child. The statute provides that when the parents of an illegitimate child shall intermarry after the birth of such child, the child if recognized by the father as his child, shall be considered legitimate to all intents and purposes, and be capable of inheriting. If it sufficiently appeared from the case that the defendant after the marriage recognized the child as his, the decision of the court might be sustained on this ground, as the judgment should not be reversed for excluding the evidence if the result would have been the same had it been received. But we do not think that fact sufficiently appears to warrant the resting of the case on that ground. The other ground, however, is sufficient to sustain the decision of the court unless there is some objection to the form of the judgment. The case states that the court rendered judgment for the defendant. It would have been more regular to have treated the suit as abated by the intermarriage of the parties. It does not appear that the court allowed any costs to the defendant, and if not, this error in the form of the entry cannot operate to the prejudice of the other party. Besides, this judgment is not against the town or overseer, but against the complainant, and it is the overseer and not the complainant that excepts. As no point is made by the plaintiff's counsel upon the form of the judgment, and as we cannot see that the town can be prejudiced by the particular form of the entry, there is no reason for reversing the judgment for this cause.

Judgment affirmed.